# THE IRAQI SPECIAL TRIBUNAL: A CORRUPTION OF JUSTICE

Prepared 8 July 2006
Revised 1 September 2006
Revised  5 December 2006

Prepared by
Ramsey Clark
Curtis F.J Doebbler

Dockets.Justia.com

TABLE OF CONTENTS

## INTRODUCTION

### Introduction                                                   - 5 -

*The IST is Illegal*                                                - 6 -

*The IST is Incapable of Providing a Fair Trial*                   - 8 -

*Action That Needs to be Taken*                                    - 13 -


## PART I

### ILLEGALITY                                                      - 15 -

*Background to the United States Illegal War of Aggression*        - 16 -

*The IST is Illegal Because It is Based on an Illegal War of Aggression*   - 18 -

*The IST is Illegal Because It Is Created in Violation of the Law of Occupation*   - 24 -

*Illegal Because It Is Created in Violation of Iraqi Law*          - 27 -


## PART II

### VIOLATIONS OF HUMAN RIGHTS                                      - 31 -

*The Applicable Law*                                               - 32 -

*The IST is Dysfunctional and Unable to Ensure Respect for Human Rights*   - 32 -

*The Flawed Creation of the IST*                                   - 33 -

*The Flawed Functioning of the IST*                               - 35 -

*Lack of Security and Murders of Defense Participants*            - 48 -

*Lack of Respect for Due Process During Investigations*           - 52 -

*Incompetence of the IST*                                         - 53 -

*The Lack of Independence*                                    - 55 -

*The Lack of Impartiality*                                    - 60 -

*Other Issues of Impartiality*                                - 63 -

*Failure to Provide Timely Charges*                           - 64 -

*No Adequate Facilities or Time to Prepare a Defense*         - 65 -

*Failure to Provide Public Trial*                             - 67 -

*Lack of Privacy Between Lawyer and Client*                   - 68 -

*Lack of Effective Defense Counsel*                           - 68 -

*Intimidation of Defence Witnesses*                           - 70 -

*Nulla Poena Sine Lege and Nullum Crimen Sine Lege*           - 72 -

*No Presumption of Innocence*                                 - 74 -

*No Equality of Arms*                                         - 74 -

*No Security of the Person*                                   - 76 -

## PART III

## ILLEGAL APPLICATION OF DEATH PENALTY            - 78 -

*No Ex Post Facto Application of the Death Penalty*           - 79 -

*No Death Penalty after an Unfair Trial*                      - 80 -

## CONCLUSION                                         - 81 -

## ANNEXES                                            - 85 -

## ENDNOTES                                          - 120 -

# Introduction

INTRODUCTION[i]

The appellate division of the Iraqi Special Tribunal (IST) should find that proceedings in the trial court below did not provide a fair trial as required by Iraqi and international law and void the trial and judgment of 5 November 2006.

The defects of legality, due process/fair trial, and of proof of facts are articulated in some detail in this submission.

The overwhelming majority of the defects of legality, due process/fair trial, and of proof of facts were submitted to the IST, but the IST refused to provide a reasoned ruling on them. Moreover, the defects of legality and due process/fair trial have been recognized by numerous international bodies, including the United Nations Working Group on Arbitrary Detention. The opinion of the Working Group dated 1 September 2006 states that the trial is unfair and violates article 14 of the International Covenant of Civil and Political Rights. This opinion should be respected by the appellate division of the IST because the government of Iraq has voluntarily agreed to be bound by this treaty and has recognized the authority of the Working Group to interpret this treaty.

The views of the Working Group are shared by the United Nations Special Rapporteur on the independence of judges and lawyers, the international non-governmental organization Human Rights Watch, and every independent expert who has reviewed the trial.

The trial was unfair and included many violations of international human rights law.

The defense arguments on illegality and unfairness should have been considered at the start of the trial when they were submitted by the defense lawyers, they must consider now by the appellate division and the trial chamber must be reversed. Instead the IST repeatedly refused to consider them from the start of the trial to the very end of it. Even on the day that the IST issued its verdict the chief judge Raouf Rasheed Abdel-Rahman refused to consider arguments about the illegality and unfairness of the court. Instead judge Abdel Rahman criticized the defense lawyers for making these legal arguments and without warning ordered Mr. Ramsey Clark, a lawyer for President Saddam Hussein and a former Attorney-General of the United States, removed from the courtroom by force when the defense lawyers tried

---

[i] The arguments made in this introduction are elaborated and substantiated with extensive citations in the following text and annexes. This introduction is merely intended to lay out the subsequent arguments in summary form.

to submit arguments concerning the illegality and unfairness of the IST. Mr. Clark was not provided an opportunity to reply or reasons for his removal.

The repeated corruption of justice by the trial chamber of the IST require that the appellate court declare the proceedings void and reverse the 5 November 2006 judgment.

The proceedings before the Iraqi Special Tribunal (IST) are an attempt to impose victors' injustice on the Iraqi people and another example of the United States' unfortunate disregard for international law. The clearly perceived unfairness of the proceedings and the illegality of the IST insult the Iraqi people and contribute substantially to the increasing violence in Iraq.

The carefully edited pictures of the trial released after American censorship show few Americans in the Courtroom, but behind every door and more disturbingly behind almost every action there are Americans pulling the strings.

This American puppet show of disrespect for the rule of law—a patently unfair trial—insults the basic principles upon which the United Nations is based. Harrowingly it will continue to its irreversible conclusion unless the member states of the United Nations act quickly to stop it.

*The IST is Illegal*

The IST is illegal in its origin primarily because the invasion and occupation of Iraq are illegal.

The international community has overwhelmingly condemned the United States' aggression against the Iraqi people. Not only have scores of leading international lawyers condemned the invasion as illegal, but so have the majority of governments. Examples of the widespread condemnation of the United States aggression against the Iraqi people include the statements of the majority of the permanent members of UN Security Council. Additionally, Germany, a non-permanent member of the Security Council in 2003, unambiguously declared that a United States-led invasion of Iraq without further Security Council authorization would violate international law. Even United Nations Secretary-General Kofi Annan has reiterated what is obvious to almost every international lawyer: the invasion and occupation of Iraq is illegal.

This is a textbook case of illegal aggression in violation of the prohibition of the use of force by one country against another found in article 2(4) of the Charter of the United Nations and under customary international law.

The Nüremberg Tribunal described such aggression as

> essentially an evil thing. Its consequences are not confined to the belligerent states alone, but affect the whole world. To initiate a war of aggression, therefore, is not only an international crime; it is the supreme international crime differing only from other war crimes in that it contains within itself the accumulated evil of the whole.[1]

It is not the person on trial in Iraq who committed this crime, but the American President George W. Bush and his allies. Rather than being brought to justice for their crimes, the Bush administration and it allies have resorted to trying their victims in a manner that insults longstanding concepts of justice and fair trial. These values have long been central to Iraqi law, Islamic values, and are international human rights. To the members of the Bush administration this action justifies or distracts attention away from its own illegal actions.

One of the ends of the illegal act of aggression was to capture, detain, try, and execute the President of Iraq, President Saddam Hussein, who had dared to stand up to the United States violations of international law. The IST, sometimes known as the Iraqi Higher Criminal Court, was created to fulfill this goal. The IST is a directly intended consequence of the United States illegal use of force.

Under international law, when illegal acts have consequences, all states are obliged not to recognize them. The United Nations International Law Commission's Draft Articles on State Responsibility, which in relevant part reflects customary international law, states this principle explicitly: states are prohibited from benefiting from their own illegal acts.

In this case, the IST and its proceedings against Iraqi President Saddam Hussein and his colleagues are intended consequences of the United States illegal aggression against the Iraqi people. These consequences must not be recognized by any state under international law because of their illegal origins.

International humanitarian law applying to occupying powers irrespective of the illegality of the use of force also prohibits the creation of new or special courts or tribunals and the political manipulation of an existing judiciary. The longstanding and almost universally ratified provisions of the Fourth Geneva Convention forbid changes to the laws or judicial system of a country under occupation.

As if the inherent illegality of the IST were not enough, the United States has constantly taunted the international community by orchestrating a trial that is as widely criticized as unfair and even farcical.

*The IST is Incapable of Providing a Fair Trial*

In the proceedings to date the IST has violated almost every provision of the right to fair trial in article 14 of the International Covenant on Civil and Political Rights that could be violated that at juncture of the proceedings.

The security of all participants in the IST proceedings is constantly threatened; the competence, independence, and impartiality of the IST is constantly undermined; and the ability of the IST to conduct a fair trial is irreparably compromised. These deficiencies are highlighted by the fact that four of the five originally selected judges of the IST have been either replaced or killed and almost half the defense lawyers representing the Iraqi President have been killed.

The Security concerns alone are reasons that a fair trial cannot be held before the IST in Iraq.

Already before the proceedings began, in March 2005, the Associated Press reported that a judge on the tribunal had been killed.

In late November 2005, another judge recused himself after the trial had started, according to the Associated Press, "… because one of the co-defendants may have been involved in the execution of his brother."

In January 2006, two judges resigned in a matter of weeks. First, IST Chief Judge Rizgar Amin was pressured into resigning by, among other individuals, Ali al-Adeeb, a senior Shiite official in Prime Minister Ibrahim al-Jaafari's party and a member of the Interim legislature, who declared to the Associated Press that "[t]he Chief Judge should be changed and replaced by someone who is strict and courageous." Shortly thereafter Judge Rizgar Amin was pressured to rescind his resignation.

In January after Judge Amin refused to rescind his resignation, the new Chief Judge of the IST was announced as Saeed al-Hammash. Within days he too was removed because of pressure from Ali Faisal, the head of the de-Ba'athification Commission, which is a creation of the U.S.-led occupying powers.

On 24 January 2006, *The Jordan Times* reported that a new judge, Raouf Rasheed Abdel-Rahman, was brought in by the powers controlling the IST. This judge is from Halabja, one of the cities in which it is claimed that the defendants committed crimes against multiple victims. It can be assumed that he is a relative or friend of some of the alleged victims. He is also alleged to have called for the President's execution without trial before joining the IST.

On 10 February 2006, Kurdish Media reported that 60-year-old Judge Ali Hussein al-Shimmiri had died. This judge had allegedly had an altercation with the new Chief Judge at a prior meeting of the IST and had fallen ill afterwards.

Finally, even before the trial began Judge Dara Nureddin refused to join the IST after having been nominated because he had allegedly been convicted and sentenced to prison by the courts functioning under the government of Iraqi President Saddam Hussein.

Shortly after joining the IST, new Chief Judge Raouf Rasheed Abdel-Rahman refused to provide a reasoned decision on a motion seeking his disqualification for bias. Despite his refusal to decide the motion in first instance, he has alleged that the Court of Appeal of the IST has decided the motion, but again no written decision has been provided. When a decision was finally provided it rejected the defense motion claiming that it should have been submitted before the proceedings on the merits started in October 2005, almost five months before Judge Abdel-Rahman whose disqualification was sought, had joined the IST. It was thus impossible for defense counsel to have challenged his impartiality at that time.

On 20 October 2005, just one day after the first hearing, defense lawyer Mr. Sadoon al-Janabi was gunned down by individuals claiming to be from the Iraqi Interim Ministry of Interior.

On 8 November 2005, another defense lawyer, Mr. Adil Mohammad Abbas al-Zubeidi, was killed and a colleague seriously injured, again with alleged involvement of the Iraqi interim government and the occupying United States forces, according to independent news reports.

On 21 June 2006, a third defense lawyer, Mr. Khamis al-Obedi, was killed, again under circumstances in which both Iraqi and United States authorities appeared to be involved.

Already after just a few days of the second trial before the IST and while the verdict from the Dujail proceedings is being awaited in the early days of September 2006, a fourth defense lawyer, Abdel-Moneim Hussein Yassin, was murdered.

Among the other striking violations of the human right to a fair trial are the lack of equality of arms between the parties and the lack of an independent and impartial tribunal.

The inequality of arms can be illustrated simply in dollar values. The United States has spent hundreds of millions of dollars supporting the prosecution of the Iraqi President. This stands in stark contrast to the defense lawyers who have been volunteering their services as *pro bono* lawyers with no adequate resources.

The inequality of arms can also be illustrated in terms of the amount of time that each side has been allowed to prepare their case. The prosecution alleges to have been collecting evidence since at least 1991—which, of course, could only be true if it were the United States government doing the collecting—and has at least been doing so since April 2003 when dozens of American lawyers and Iraqis who had not lived in Iraq for years were shuttled in to build a case. In contrast, the defense lawyers, despite requesting visits with their client since December 2003 when he was detained, have never been allowed the confidential visits that are necessary to begin to prepare a defense. No visits were allowed with the most senior lawyers until after the trial had started and at each visit American officials exercise the authority to read any materials brought into the visiting room despite the fact that all meetings remain under close audio and visual surveillance. Moreover, the defense was provided just a matter of minutes to begin presenting its defense, including calling defense witnesses, after the charges were made known on 15 May 2006. And within weeks, as compared to the months allowed the prosecution, the defense was forced to end its defense after being told it could not call any more defense witnesses.

As if this were not enough, evidence was also withheld from defense counsel. The defense lawyers were denied access to investigative hearings, were denied prior notice of witnesses, and were prevented from even visiting the site of the alleged crime.

Frequently trial sessions have been announced without advance notice and without any consultation with the defense lawyers. This makes it impossible for the most experienced lawyers to attend the hearings and they have thus missed their only opportunities for meetings with the President.

All of these rights are part of the right to a fair trial under both Iraqi law and international law. This law, however, is violated with impunity. The extent of this impunity was evidenced on 24 January of this year when the judicial clerk Mr. Riza Hasan attempted to return the more than fifty page brief that had been submitted to IST claiming that "the judges did not want it." Perhaps he was explaining why none of the motions that have been submitted to the IST, including motions on illegality of the IST and disqualification of specific judges, have never received a reasoned reply and most have received not reply at all.

The interference with the independence of the tribunal has permeated all its aspects. Four out of five judges who started the cases have been removed through publicly acknowledged interference that can be attributed to the United States' interference. The judges have been continuously harassed by Iraqi and American politicians. Even American President George W. Bush has declared that the trial is on track and that the Iraqi President *will be* executed.

And as an apparent attempt to prevent the disclosure of the serious violations of human rights, the IST has repeatedly refused to provide defense lawyers a transcript of the proceedings.

In September 2005, four prominent statesmen wrote the UN Secretary-General advising him of the threat to participants in the trial in Iraq. These warnings were ignored. Several weeks later, two defense lawyers were murdered in a manner evidencing the involvement of the United States authorities and the Iraqi authorities who are cooperating with them. In May 2006, a defense witness was killed after his whereabouts were disclosed to US authorities.

The judges' lack of impartiality has also been repeatedly made apparent. In a film shown in France in 2005 and produced by Jean-Pierre Krief for Arte France and KS Visions, a judge of the IST states that the Iraqi President who at the time was about to go on trial before the IST had "persecuted the Kurds. He killed them, wiped many of them out. He also used chemical weapons with the aim of committing genocide against this race, against this people, to eradicate them as a nation. He also went after the Shiites due to their religious beliefs." In the same film, another judge states that the President is "one of the worst tyrants in history." These are not the statements of impartial judges, who in the inquisitorial system of justice such as that of the IST, is both the evaluator of law and fact. These are instead the statements of persons who have been put in place by an illegal occupying power to serve its ends and not to achieve justice.

On 12 of June, 2006, further evidence of the bias of IST was provided. In public, in the presence of all participants in the proceedings in the courtroom, a judge of the IST proceeded to read out loud a series of allegations of unethical conduct by defense counsels. The judge accused the defense counsel for the President of bribing their own witnesses. The allegations were claimed to have been based on statements made by the defense witnesses who had in the interim been beaten, arrested and held without access to counsel of their choosing by the Iraqi government with the cooperation of the United States authorities. These allegations were read in front of the lawyers' clients and in a public session of the IST panel that is trying the clients of these lawyers. The IST did not bring the defense witnesses into the courtroom, although it had had them in custody for almost two weeks before this statement was made. The IST did not provide defense counsel copies of the allegations nor the right

to respond to them. And the IST subsequently—through a person who claimed to be an officer of the IST—threatened the defense lawyers with arrest if they challenged the IST's actions.

These numerous incidents are irrefutable evidence that the IST is biased, the trial is unfair, and that a mistrial must be declared.

In March 2006 the European Court of Human Rights avoided deciding whether the trial violated international human rights law by claiming that it had no jurisdiction. The European Court supported its ruling by holding that it had not been proven that any of the European members of the American-led coalition were involved in the trial. The European Court did implicitly seem to agree that it was the United States—and not Iraq—that was responsible for the trial. The UN Working Group on Arbitrary Detention on 30 November 2005 and the UN Special Rapporteur on the Independence of Judges and Lawyers on 31 August 2005 and again on March 2006 explicitly confirmed that the United States shared responsibility with the Iraqi authorities. Annex's A, B, and C.

These international human rights experts have also condemned the trial as unfair. In his March 2006 report to the newly created Council on Human Rights, the Special Rapporteur on the independence of judges and lawyers, Leandro Despouy stated that after "analysis and special concern of the Special Rapporteur since 10 December 2003 when the Statute of the Iraqi Special Tribunal (IST) was adopted and throughout its development ... [the Special Rapporteur] express[es] his reservations regarding the legitimacy of the tribunal, its limited competence in terms of people and time and the breach of international human rights principles and standards to which it gives rise." Annex C.

On 1 September 2006, in a decision sent to defense lawyers on 25 October 2006, the UN Working Group on Arbitrary Detention handed down a final opinion stating unequivocally that

> The deprivation of liberty of Mr. Saddam Hussein is arbitrary, being in contravention of article 14 of the International Covenant on Civil and Political rights to which Iraq and the United States are parties, and falls within category III of the categories applicable to the consideration of the cases submitted to the Working Group.

This decision constitutes an authoritative decision concerning the legally binding obligations in article 14 of the International Covenant on Civil and Political Rights.

The first chief judge Amin Rizgar also expressed his opinion that the trial was unfair on 5-7 November 2006 in the television interview broadcast in Iraq.

No unbiased observer has considered the IST to be both legal and acting with respect for the human right to a fair trial. Many observers have had the courage to condemn the IST it for its illegality or violations of human rights.

*Action That Needs to be Taken*

Both, Professor M. Cherif Bassiouni of DePaul University, a leading expert in international criminal law and the IST original architect, as well as Professor Leandro Despouy, the United Nations' expert on fair trial, have called for the trial to be held before a truly international court under UN auspices. Both these eminent experts have pointed to the several recent examples of tribunals or courts under United Nations auspices that can ensure justice and a fair trial.

Only removing the trial to a forum that can ensure a fair trial will restore respect for the rule of law. The solutions proffered by the United States to date merely emulate and emphasize already serious violations of international law. Furthermore, the path currently being followed before the IST indicates a significant disregard for international law.

Although there is a widespread perception that the trial is illegal and unfair, the Security Council, has to date refused to act to ensure respect for the rule of law.

The UN Security Council has acknowledged in its Resolution 1483(2003) that the Secretary-General's Special Representative for Iraq is responsible for "promoting the protection of human rights" in Iraq, but little successful action has resulted from this acknowledgment.[2]

The situation has deteriorated to such a state that in early 2006 the outgoing UN human rights chief in Iraq, Mr. John Pace, described the situation of human rights in Iraq as the worst it has ever been and deteriorating daily.

The UN should take a stand on the issue of unfair trial as part of its explicit mandate to promote human rights in UN Security Council Resolution 1483(2003). The fairness of these proceedings, which are closely followed by Iraqis and throughout the Arab world, is a crucial test of the international community's commitment to the rule of law.

The international community failed to stop the United States' illegal aggression against the Iraqi people and the United States illegal—foreign and oppressive—occupation of the Iraqi people. Now insufficient action is being

taken to stop an unfair and illegal trial with the consequence that this abuse of law is substantially contributing to the increasing violence in Iraq.

Imposition of the judgment will be illegal and is likely to contribute substantially to increased violence in Iraq.

As a first step towards ensuring respect for the rule of law in Iraq the appellate division of the IST should annul the 5 November 2006 judgment of the trial chamber and declare a mistrial.

# Part I

# Illegality

*Background to the United States Illegal War of Aggression*

In the 1980's, the United States had sought out and established the relationship of an ally with Iraq according to official United States documents.[3] This relationship was strengthened when current United States Secretary of Defense Donald Rumsfeld, as a special envoy of the United States government, traveled to Iraq for a highly publicized visit to Iraqi President Saddam Hussein to assure him of America's friendship and support.[4]

It was only after Iraq refused to follow the United States' agenda, starting in 1988, that the United States began it campaign against the Iraqi people in earnest.

The first manifestation of this campaign was the use of force against Iraq in 1991 followed by years of deadly sanctions.[5] The sanctions started after the conclusion of the first Gulf War on 3 March 1991 and remained in effect through the most recent war. The sanctions killed hundreds of thousands of Iraqi children.[6] The sanctions were maintained by the United States despite the clear objection of the overwhelming majority of states in the international community and resignation of several senior international officials who cited the humanitarian tragedy being caused to the Iraqi people by the sanctions.[7] At the time, the United States Ambassador to the United Nations, Ms Madeline Albright, coldly accepting that a half million Iraqi children with the inhuman retort that in America "we think the price is worth it."[8]

At the same time, and despite the fact that a ceasefire had been agreed on 3 March 1991, the United States and its allies continued to enforce a no-fly zone over much of Iraq by carrying out regular bombing raids against the Iraqi people.

Finally, at approximately 02:30 GMT on 20 March 2003, the United States elevated its aggression against Iraq to an international armed conflict by leading an all out attack against the Iraqi people.

The United States acknowledged responsibility for this attack at the highest levels of its government.[9] Senior legal advisors of the United States government justified the attack as a "preemption of Iraq's possession and use of weapons of mass destruction."[10]

Emerging from a meeting with American CIA director George Tenet in 2002, the United Kingdom's intelligence chief Sir Richard Dearlove stated that "Bush wanted to remove [Iraqi President] Saddam [Hussein], through military action, justified by the conjunction of terrorism and WMD [weapons of mass destruction]. But the intelligence and facts were being fixed around the policy."[11]

No evidence of links to terrorism or weapons of mass destruction was ever found to have existed. The United States and its allies had lied to the world or even worse had attacked another country out of pure ignorance. None of the justifications given by the United States and its allies, even if they had been true, however, could have justified the use of force against another country. The use of force by one country against another, unless required as an act of self-defense or in furtherance of a unambiguous Security Council decision under Chapter VII of the Charter of the United Nations is absolutely prohibited as norm of *jus cogens*.[12]

The United States' attack against the Iraqi people that began on 20 March 2003 pitted the world's most advanced and most expensive military against a country that had been subjected to more than a decade of deadly sanctions.

Under the rule of Iraqi President Saddam Hussein, Iraq was transformed into a country with a high literacy rate, good medical care, and an effective social welfare system. The Iraqi people were transformed from a developing country to a developed country with health and social development indicators improving spectacularly.[13]

The imposition of sanctions on Iraqi in 1990 seriously obstructed the development of Iraq. Despite the sanctions the state health care, education, the economy, and the judiciary are widely considered to be of a far higher quality than those currently functioning are under occupation. A reputable 1991 study by noted international development economists indicated that the distribution of rations by the government of Iraq was equitable even shortly after the country had been ravished by the war in early 1991.[14] This study also reliably estimated that infant mortality had tripled as a result of the war.

The United States' 2003 attack on the Iraqi people has been reliably estimated to have caused at least 150,000 additional civilian deaths in the first year alone, according to a study by reputed scientists published in the highly respected British medical journal *The Lancet*. This figure excluded the casualties in what was reported as a 'massacre' in Fallujah.[15]

The use of force against Iraq that began on 20 March 2003 threatened international peace and security and interfered with the territorial integrity and political independence of Iraq. The international peace and security is threatened by the deployment of hundreds of thousands of soldiers under United States control and in a manner that threatens the right to life of every one of the estimated 26 million Iraqis. Today there are still over a 100,000 of the invading soldiers occupying Iraq.

The territorial integrity and political independence of Iraq has been violated by the aggression that is still continuing today with parts of Iraq under occupation and administered by a government that is publicly colluding with the occupying powers that mounted the original aggression against the people of Iraq.

The overwhelming majority of international legal scholars and government leaders consider this use of force a violation of the most fundamental provisions of international law in the Charter of the United Nations.[16] No unbiased observer has considered the IST to be both legal and acting with respect to human rights.[17]

### The IST is Illegal because it is based on an Illegal War of Aggression

The attack against Iraq by the United States and its allies is a violation of international law and the IST created to carry out the objectives and purposes of the unlawful use of force is illegal.

The illegal attack by the United States and its allies against Iraq is undisputedly attributable to these states. As indicated below, these parties themselves have claimed that they carried out the attack. The attack is also a violation of the *jus cogens* principle international law that one state must not use force against another.

In Part I, which follows, it is shown that the United States action is a violation of an international obligation found in both treaties and customary international law that incurs it responsibility and special obligations for other states in the international community.

On 20 March 2003, the United States began to use illegal force against Iraq. That this illegal use of force is attributable to the United States and its allies is not in dispute. First, the United States Congress passed a Joint Resolution authorizing the use of force against Iraq in the law.[18] Second, the United States government stated to the world that it was attacking Iraq when at 03:15 UTC on 20 March 2003 (22:15 EST on 19 March 2003) United States President George W. Bush announced that he had ordered an "attack of opportunity" against Iraq.[19] Finally, the United States government admitted to the Member states of the United Nations that it was attacking Iraq.[20]

An act of aggression by a state constitutes one of the most serious violations of international law against the entire community of nations. The aggression against Iraq is one of the most serious acts in the international community in recent years. The individuals involved in it as well as those who provide indirect support committed the international crime of aggression that the Nuremberg Tribunal described in the following language:

> War is essentially an evil thing. Its consequences are not confined to the belligerent states alone, but affect the whole world. To initiate a war of aggression, therefore, is not only an international crime; it is the supreme international crime differing only from other war crimes in that it contains within itself the accumulated evil of the whole.[21]

A war of aggression is a violation of the international obligations of the states involved, particularly the United States. The legal obligations of the United States and its allies are contain in treaties and customary international law.

The prohibition on the use of force is enshrined in article 2, paragraph 4, of the Charter of the United Nations. This article prohibits "the threat or use of force against the territorial integrity or political independence of any state." The United States, its allies in the invasion, as well as the Iraqi government, have all ratified this treaty. The prohibition on the use of force is one of the most fundamental principles of the Charter and a basic principle of international law. In its statements before the International Court of Justice, the United States government has itself recognized that it is "generally considered by publicists that Article 2, paragraph 4, of the United Nations Charter is an embodiment of the existing general principles of international law," and that it is "inconceivable that this Court could consider the lawfulness of an alleged use of armed force without referring to the principal source of the relevant international law—Article 2(4) of the United Nations Charter."[22]

The International Law Commission has long held that "the great majority of international lawyers today unhesitatingly hold that Article 2, paragraph 4, together with other provisions of the Charter, authoritatively declares the modern customary law regarding the threat or use of force."[23]

By using force against Iraq, the United States violates its legal obligation under article 2, paragraph 4 of the Charter of the United Nations.

The obligation to refrain from the use of force in international relations is also found in articles I and II of the General Treaty for the Renunciation of War.[24] This treaty has been ratified by the United States government and remains in force today. Article I of this treaty states that "[t]he High Contracting Parties solemnly declare in the names of their respective peoples that they condemn recourse to war for the solution of international controversies, and renounce it as an instrument of national policy in their relations with one another."

In considering states' obligations under this treaty, the prestigious International Law Association has declared that a "state which threatens to resort to armed force for the solution of an international dispute of a conflict is guilty of a violation of the Pact."[25]

Lacking a justification for its use of force against Iraq, the United States and its allies have violated their legal obligations under the General Treaty for the Renunciation of War by using force against Iraq.

The rule prohibiting the use of force is also well-established under customary international law. The International Court of Justice referred to the rule as a "fundamental principle outlawing the use of force in international relations."[26] When discussing the law of treaties, the International Law Commission declared that "… the law of the Charter concerning the prohibition of the use of force in itself constitutes a conspicuous example of a rule in international law having the character of *jus cogens*."[27] A *jus cogens* rule of international law is non-derogable under any circumstance. That the prohibition of the use of force constitutes a rule in international law having the character of *jus cogens* cannot be in doubt today given the overwhelming body of opinions supporting this position. This is supported by the uncontested statements of both parties before the International Court of Justice;[28] statements of the International Law Commission;[29] uncontradicted statements by numerous Governments at the Vienna Conference on the Law of Treaties;[30] and United Nations General Assembly's Declaration on Principles of International Law concerning Friendly Relations and Cooperation among States in accordance with the Charter of the United Nations.[31]

As this rule prohibits the use of force in relations between states, it is clearly violated when one or more states use armed force against another state. The United States and its allies violated this rule of law when they used force against Iraq starting in March 2003.

The prohibition of the use of force is violated whenever one or more states use force against another state without lawful justification.

Under modern international law, only two justifications exist for the use of force by one state against another: self-defense or express UN Security Council authorization.

The justification of self-defense is established in article 51 of the Charter. This provision allows states to respond to an armed attack by using force until the United Nations Security Council intervenes to assert jurisdiction over the dispute. Self-defense is only a legal justification for the use of force when a state has directly suffered an armed attack. In reviewing the facts of this case, there is no indication that the United States or any of its allies were ever subjected to an attack by the government of Iraq. Such threat has been considered not to exist by the United States' own Central Intelligence Agency and Naval War College.[32]

The second justification for the use of force exists if the United Nations Security Council has expressly authorized it. The United States has claimed that UN Security Council Resolution 1441 represents such an authorization. This argument is premised on the assumption that Resolution 678(1991), authorizing the use of force and imposing a lengthy list of obligations on Iraq, has been breached, and that in order to remedy such a breach, Resolution 1441(2002) implicitly authorizes the use of force by re-activating Resolution 678.

Such argument contradicts the position taken by the United States when Resolution 1441 was adopted. On the day of the vote on Resolution 1441, the then-U.S. Ambassador to the UN John Negroponte, reaffirming that this had consistently been the position of the United States government on this matter, stated that in the event of a 'further breach' by Iraq, "this Resolution contains no 'hidden triggers' and no 'automaticity' with respect to the use of force," adding that "[i]f there is a further Iraqi breach reported to the Council by UNMOVIC, the IAEA, or a member state, the matter *will return to the* Council for discussions."[33] This argument regarding the automaticity of SC 1441 was also rejected by three permanent members of the Security Council,[34] the majority of states on the Security Council,[35] and the overwhelming majority of legal commentators.[36] Even former staunch United States' ally, the former Prime Minister of the United Kingdom Baroness Margaret Thatcher, criticized the invasion as illegal.[37] And opinion polls showed that a significant majority of the people of nearly all countries or the world opposed the war without an UN mandate, and that many people viewed the United States as a danger to world peace.[38]

In any event, the use of force authorized in UNSC Resolution 678 explicitly ended on 3 April 1991 when the Security Council adopted Resolution 687. This resolution ended all authority for using force against Iraq.[39]

As the United States' justification for the use of force is fatally flawed, its attack against Iraq was not justified and therefore violated international law.

A longstanding principle of international law is that the consequences of an unlawful use of force must not be recognized as lawful, especially if the consequences are carrying out the objectives and purposes for which the unlawful use of force has been undertaken.[40]

Reflecting a rule of customary international law, article 41(2) of the International Law Commission's (ILC) articles on State responsibility unequivocally states that "[n]o State shall recognize as lawful a situation *created by a serious breach ...*" [emphasis added].[41]

This principle was expressly agreed to by the United States in article 11 of the Montevideo Convention on the Rights and Duties of States[42] and by the United States' support of the resolution of the Sixth International Conference of American States condemning aggression on 18 February 1928.

This principle is also supported by highly qualified legal publicists. For example, Professor Bin Cheng, one of the leading experts on general principles of international law, surveying the practice of international and national tribunals, wrote almost two decades ago that "[t]he judicial essence of responsibility is that it imposes an obligation upon every subject of law who commits an unlawful act to wipe out all the consequences of that act and to re-establish the situation which would, in all probability, have existed if that act had not been committed. It is a logical consequence flowing from the very nature of law and is an integral part of every legal order."[43]

In this case, this well-established principle of law requires at least that consequences that perpetuate, and are a direct aim of the original illegal act of use of force, must be reversed and must not be recognized as legal by any state. The creation and functioning of the IST is one of these consequences. The IST must therefore not be recognized as legitimate by any state in the international community.

The IST was created by the Coalition Provisional Authority (CPA).[44] The CPA, itself an entity that was created by the countries that are occupying Iraq, is a consequence of the illegal use of force against Iraq. The occupying powers have "all executive, legislative and judicial authority" according to their own proclamation in Section 1 of CPA Regulation No. 1.[45] The United States is the country primarily responsible for the creation of the CPA and therefore, the IST.

The United States President has stated that its use of force against Iraq was done with the intention of removing the lawful government of Iraq, specifically the President of Iraq.[46] The creation and functioning of the IST is an integral part of the use of force against Iraq and the occupation of Iraq, which share the primary goal of removal of the lawful President of Iraq.

Furthermore, the Statute creating the IST is a direct consequence of the illegal invasion and occupation of Iraq. The IST was formed not by a sovereign act of the Iraqi people, but by the fiat of the occupying powers which issued CPA Order No. 48.[47] The exercise of jurisdiction by the IST despite such inherent illegality must not be recognized as legal by any state—including a subsequent state of Iraq government—as to do so would violate a general principle of the international law of state responsibility that the consequences of illegal actions must not be recognized.

The attempt by the US-led occupying powers operating through the Iraqi Interim authorities to shift the responsibility for the IST to the Iraqi Interim authorities by urging them to re-adopting the Statute that had in effect already been adopted by CPA Order No. 48, with new legislation that makes only cosmetic changes of the on an unspecified date in August 2005, is merely an attempt by the US-led occupying powers to derogate from its obligations under the law of occupation that is stated in articles 54 and 64 of the Geneva Convention Relative to the Protection of Civilian Persons in the Time of War, 12 August 1949.[48]

This attempt was carried out by the Governing Council, which is itself a body created by the US-led occupying powers who are represented by the CPA. This is made clear by CPA Regulation No. 6 that unequivocally states that the

> The CPA *recognized* the formation of the Governing Council as the principal body of the Iraqi interim administration, pending the establishment of an internationally recognized, representative government by the people of Iraq, consistent with Resolution 1483 (emphasis added).

As is the case of all CPA regulations, CPA Regulation No. 6 has been adopted by the US-led occupying powers through the CPA, which they control, not a sovereign Iraqi government. Since the occupation of Iraq began in March 2003 no elections meeting the standards of UN Security Council Resolution 1483 have taken place.

The subsequent attempts to legitimize the IST are based on faulty foundations emanating from the CPA, the Iraqi Governing Council, or an Iraqi government that was named only after elections that were orchestrated by the United States. All persons supporting the previous government were banned from the elections, coercion was used to ensure voters turned out and voted as the occupiers wished, and funds were even provided to the campaigns of person supporting the occupying regime. As a result the elections were little more than an attempt to justify the occupation and the victors depended on the occupiers to survive in power.

Further evidence of the fact that the IST was created by the occupying powers is the fact that all the trial judges, appellate judges, investigating judges and prosecutors had to be formally approved by the United States. This practice apparently continues to date as in early 2006 a judge, nominated by his peer to be the Chief Judge, prevented from sitting on a case by a United States established vetting agency.

It is also clear that subsequent action cannot transform an entity that is illegal into one that is legal when the foundation of legality at issue are the initial illegal acts of invading Iraq and the subsequent attempt to reorder its courts.

The non-recognition of illegal actions is a responsibility of states that has been recognized by the International Court of Justice as being part of customary international law.[49] This elementary principle is binding on every sovereign state including Iraq. If the Iraqi authorities were to recognize the consequences of the United States' illegal act, this would make the current government of Iraq jointly responsible for the violation of international law that occurred on its own soil when armed force was first used against the Iraqi people in March 2003. Such a situation would not only incur the current government of Iraq's responsibility for the violence against its own people under international law, but would also indicate to the Iraqi people how politically unfortunate a position its own government is willing to adopt as pertains to the slaughter of hundreds of thousands of its own citizens in violation of international law.

### The IST is Illegal Because
### It Is Created in Violation of the Law of Occupation

Iraq is occupied by the United States and its allies according to international law.[50] Article 42 of the Hague Regulations provides that "[t]territory is considered occupied when it is actually placed under the authority of the hostile army." As such, from the day United States forces gained control over Iraq's territory, the country was deemed occupied. By 1 May 2003, when the United States President and Commander-in-Chief of its military announced that major military operations had ended, Iraq had become occupied land.

Articles 54 and 64 of the Fourth Geneva Convention Relative to the Protection of Civilian Persons in the Time of War[51] (hereinafter "Fourth Geneva Convention"), provide respectively that an occupying power may not "alter the status of public officials or judges in the occupied territories", that "the penal laws of the occupied territories shall remain in force", and that "no new penal laws may be issued."

Article 54 of the Fourth Geneva Convention states in relevant part that "[t]he Occupying Power may not alter the status of public officials or judges in the occupied territories..." and article 64 states in relevant part that "[t]he penal laws of the occupied territory shall remain in force ... the tribunals of the occupied territory shall continue to function..." These provisions state the general rule, in accordance with the general object and purpose of this treaty and international humanitarian law, which is that an occupation is not permanent and the occupying powers must not change the laws of institutions of an occupied country.[52]

The rationale behind article 54 of the Fourth Geneva Convention is explained in the International Committee of the Red Cross' *Commentary* as:

> [j]udges and other members of the judiciary, for their part, are the natural guardians and protectors of the inhabitants of the country in their relations with the Occupying Power and their resignation might well paralyse the whole administrative and judicial machinery, in which case protected persons would be the first to suffer.[53]

Indeed subsequent to the United States-led invasion and occupation of Iraqi, this grim prediction has been proven valid in cases such as Abu Ghraib, Tal Afar, and Fallujah, among many others examples. In these cases, Iraqi civilians have been brutalized while being prevented from having any meaningful recourse to the courts to protect their rights. This is largely because the existing Iraqi courts were not allowed to function or because these courts were prevented from functioning by the state of insecurity that is the result of the illegal aggression against, and occupation of, Iraq.

Similarly the rationale behind article 64 of the Fourth Geneva Convention is explained in the International Committee of the Red Cross' *Commentary* as being the "fundamental notion" that "the penal legislation in force must be respected by the Occupying Power."[54] Furthermore, the only two exceptions for which the occupying power might change any penal law—substantive or procedural—are "two exceptions ... of a strictly limitative nature" and not derogating from the general rule that "[t]he occupation authorities cannot abrogate or suspend the penal laws for any other reason -- and not, in particular, merely to make it accord with their own legal conceptions."[55]

Neither of the permitted exceptions—the security of the occupying forces or making the law more humane for the occupied population—apply in this instance. The creation of the IST has had an effect of contributing to the deterioration of security of the occupying forces as it is widely viewed as an example of the occupiers' oppression. Furthermore, as indicated by the long catalogue of human rights violations documented here the IST is not able to secure the basic due process rights of the individuals who are before it and it thus treats the occupied population inhumanely.

Both articles 54 and 64 were violated when the US-led occupying power created the IST.

In addition to their obligations under articles 54 and 64 the occupying powers must not:

-change the administration of an occupied territory according to articles 51, 54 and 64 of the Fourth Geneva Convention and articles 43 and 48 of the Hague Regulations;

-change the legal system according to article 43 of the Hague Regulations;

-prosecute inhabitants of occupied territories for acts committed before the occupation began, according to article 70 of the Fourth Geneva Convention; and,

-enact retroactive penal provisions according to article 65 of the Fourth Geneva Convention.

Moreover, according to article 7 of the Fourth Geneva Convention, the occupying power must not enter into agreements with any authority in the occupied territories that "shall adversely affect the situation of the protected persons, as defined by the present Convention, or the rights which it confers upon them."

The manner in which the IST was created and the provisions of its enabling Statute violate each and every of these provisions.

As already shown, the IST was created by the occupying powers while they occupied Iraq. The enabling Statute of the IST was drafted by the CPA and enacted by a decree of the CPA before any attempt was made to transfer authority back to the Iraqi people. The Iraqi authorities attempt to re-adopted the Statute in August 2005 was nothing less than a ratification of the CPA action by a body created by the CPA and not representative of the Iraqi people.[56]

That the occupying power, through the CPA, created the IST is established by the fact that Order No. 48, containing the Statute of the Iraqi IST, had to be signed by CPA Administrator L. Paul Bremer before it could enter into force.

The Statute of the IST also contains provisions which modify the penal provisions of Iraqi law in an *ad hoc* manner. For example, some provisions of existing Iraqi law are incorporated into the document in article 14 of the Statute of the IST; while others are left out, apparently because they would be favorable to defendants coming before the IST, for example, article 40 for example of the Constitution of Iraqi from 1970 provides for head of state immunity.

Furthermore, Section 2 of CPA Order No. 15 of 23 June 2003 sought to suspend provisions of the Iraqi Law on Judicial Organization,[57] which violates articles 54 and 64 of the Fourth Geneva Convention.

The creation of the IST in 2003 and its re-creation in 2005 were unmitigated attempts by the US-led occupying powers to alter the penal laws of the occupied territories.

By attempting to add an 'extraordinary', 'exceptional' or 'special' tribunal to the existing Iraqi judiciary, the creation of the IST constitutes an attempt to change the legal and administrative system of the occupied territories.

Furthermore, by vetting and naming judges based on their political opinions the occupying powers impermissibly altered the status of judges in the occupied territories.

These attempts violate international humanitarian law and make the IST an illegal body.

### Illegal Because It Is Created in Violation of Iraqi Law

The IST was created by the United States despite the existence of courts, judges, and a process for both creating courts and naming judges. These processes are set forth in section IV, articles 60 and 61 of the Iraqi Constitution of 16 July 1970 and the Iraqi Law on Judicial Organization.[58] These laws were in force when Iraqi was subjected to a war of aggression in 20 March 2005. The Iraqi laws intentionally created a judiciary that was different from that of the United States and Europe. Nevertheless, these existing laws were ignored and a judicial model based upon foreign traditions and written by American lawyers was imposed on Iraq.

The United States promulgated CPA Order No. 15 on 23 June 2003 in English. It was not until 126 days later that an Arabic copy was produced and available to the Arabic language Iraqi population. Section 2 of Order No. 15 sought to suspend provisions of the Iraqi Law on Judicial Organization,[59] but did not specify which provisions were suspended.

Section 1 of this CPA Order established a Judicial Review Committee that was expressly made subordinate to the CPA. According to Section 6 of Order No. 15 the Judicial Review Committee is "bound by and operating in accordance with its Terms of Reference and any Regulations, Orders or Memoranda issued by the [CPA] Administrator."

Among those Order sand Memoranda issues by the CPA are De-Ba'athification Order No. 1[60] and Coalition Provisional Authority Memorandum Number 1 on the Implementation of De-Ba'athification Order No. 1. The essence of these CPA promulgated instruments, which the Judicial Review Council is bound to implement, is that no Iraqi who is a member of

the Ba'ath party may be a judge and those who are already judges may be removed. Indeed, more than a hundred Iraqi judges have been removed because of their affiliation with the Ba'ath party.

In additional CPA Order No. 17 entitled "Status of the Coalition Provisional Authority, Certain Missions and Personnel in Iraq" and issued on 27 June 2004 declares that all United States personnel are immune for the jurisdiction of the IST. Thus despite the fact that the IST attempts to apply penal law retroactively to Iraqis who would otherwise be immune under the law existing a the time of their alleged offenses, it both retroactively and proactively makes immune the United States soldiers who have participated in war crimes, crimes against humanity, and the crime of aggression against Iraqis. Iraqi Prime Minister Nuri al-Maliki recognized the hypocritical nature of this situation when he was forced by the Iraqi public to call upon the UN Security Council "to lift the immunity" of American soldiers.[61]

Furthermore, the members of the Judicial Review Committee are three Iraqis and three internationals who serve at the discretion of the CPA, according to Section 3 of Order No. 15. This allows the United States to effectively control the Iraqi courts.

Although vaguely defined in Order No. 15—apparently to obscure a conflict with international law concerning the independence of the judiciary—the responsibility and task of the Judicial Review Committee, which it exercises in practice, is to screen judges for their political affiliations. This ensures the elimination of judges who are hostile to the illegal occupation of Iraq or partial to former government of Iraq or the Ba'ath party. This function is made clear by reading CPA Order No. 15 in conjunction with CPA Order No. 1. In the case IST, it members were subject to the same screening process. The panel of IST judges hearing this case, to the best of defense counsels' knowledge, was subjected to a screening process that eliminated all Sunni candidates; thus ensuring that judges retained to serve would be drawn from a panel of Kurd and Shia judges.

The IST itself was created by Order No. 48. The latter contained the Statute of the IST and was signed by CPA Administrator L. Paul Bremer on 10 December 2003. At that time, the Iraqi Law of Judicial Organization[62] was already the basis of the judiciary and *de jure* remained so in accordance with article 64 of the Third Geneva Convention, which unequivocally states that "... the tribunals of the occupied territory shall continue to function..."

The IST was created outside of, and is in direct conflict with, the established Iraqi legal system. Although approved by a special provision of the TAL adopted on 8 March 2004, the IST is nothing more than a United States proxy as the Iraqi Governing Council itself and the TAL had been created by the

United States controlled CPA. Both the TAL and the Iraqi Governing Council were created and adopted while Iraq was under illegal occupation. United Nations' Security Council Resolution 1511[63] this fact by recognizing both the TAL and the fact that Iraq is an occupied country.

The exceptional nature of the IST is recognized by the manner in which it was referred to in the authoritative text at the time it was adopted—the English language text which calls the body the "Iraqi Special Tribunal." The language of article 48 that refers to the IST as a 'special tribunal' is in complete contradiction with articles 3, 12, 15(1) and 43 of the same instrument.

Article 15(I) of the TAL unequivocally states that "special or exceptional courts may not be established." This provision is expressly violated by the establishment and continued functioning of the IST. This violation cannot be remedied by reference to article 48, as to do so would be to undermine the very essence of the rule of law in Iraq.

Additionally, the IST is inconsistent with Iraqi law because it violates basic principles of international human rights law which are binding on the Iraqi government authorities according to article 44 of the Iraqi Constitution.

The competence of a court anywhere in the world is based first and foremost on the fact that it has been created in accordance with pre-existing law. This has been stated unambiguously by the state parties to the International Covenant of Civil and Political Rights (ICCPR) describing the requirement of a "competent" court in accordance with article 14 of this treaty.[64] Iraq and the United States are parties to the ICCPR.

Article 14 of the ICCPR requires that courts be established under preexisting law. This provision is intended to ensure that courts are not established to adjudicate specific cases based on political or other biases. This article is further explained by Principle 5 of the Basic Principles on the Independence of the Judiciary, which states that:

> [e]everyone shall have the right to be tried by ordinary courts or tribunals using established legal procedures. Tribunals that do not use the duly established procedures of the legal process shall not be created to displace the jurisdiction belonging to the ordinary courts or judicial tribunals.[65]

Principle 5 has, as such, been interpreted as expressly prohibiting the use of special courts. The United Nations Working Group has stated that "one of the most serious causes of arbitrary detention is the existence of special courts."[66] Annex A.

A court specially created to try only specific individuals for specific offences constitutes a form of vindictive injustice that undermines the rule of law and can cause irreconcilable divisions in Iraqi society. The IST is prohibited from prosecuting persons who are committing serious breaches of international law, such as the United States' soldiers and politicians who authorized and carried out acts of illegal aggression against the Iraqi people.

The IST violates general international law prohibiting a state from benefiting from its own illegal use of force. The IST also violates international humanitarian law and Iraqi law because it was created by the occupying powers in manner that is inconsistent pre-existing Iraqi law and in violation of international humanitarian law.

# Part II

# Violations of Human Rights

.

*The Applicable Law*

This evaluation takes into account the following treaty obligations or obligations under customary international law to which Iraq and all or some of the occupying powers are legally bound: the Charter of the United Nations (1945); the International Covenant of Civil and Political Rights (ICCPR);[67] the International Covenant of Civil and Political Rights (ICESCR);[68] the Convention on the Rights of Children;[69] the Convention on the Elimination of All Forms of Discrimination Against Women;[70] the Convention on the Elimination of All Forms of Racial Discrimination;[71] the Regulations annexed to the Fourth Hague Convention Respecting the Laws and Customs of War on Land, (hereinafter "Hague Regulations");[72] the Third Geneva Convention Relative to the Treatment of Prisoners of War, 12 August 1949 (Third Geneva Convention);[73] the Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War (Fourth Geneva Convention).[74] All of the provisions of all of these instruments remain in force today and are part of Iraqi law either as treaties or as reflections of customary international law.

The United States is additionally bound by the rules of customary international law reflected in the American Declaration on the Rights and Duties of Man.[75]

The right to a fair trial is well established in Islamic,[76] Iraqi[77] and international law.[78] Highly qualified legal publicists have written that the "importance of this right in the protection of human rights is underscored by the fact that the implementation of all other rights depends upon the proper administration of justice."[79] Article 20 of the original Statute of the IST, article 19 of the new Statute of the IST, article 14 of the International Covenant of Civil and Political Rights, as well as numerous other international human rights instruments, all provide for the right to a fair trial.

The right to a fair trial is fundamental to every society and very person. The United States government has criticized other states who have taken similar actions as violating the human right to fair trial under international human rights law.[80]

*The IST is Dysfunctional and Unable to Ensure Respect for Human Rights*

Since its inception the IST has been plagued by its inability to function and its inability to ensure respect for human rights. During the whole of the Dujail trial President Saddam Hussein has still not been able to have a single confidential meeting with his legal counsel that provides him the opportunity to prepare his defense.

During the proceedings there has also been no written and reasoned decision by the IST on any of the motions submitted by defense counsel, namely:

a. 19 October 2005: A motion indicating that notice of evidence and witnesses was not provided to defense counsel in a timely manner.
b. 19 October 2005: A motion calling for the proceedings to be suspended due to insecurity.
c. 8 December 2005: A preliminary motion challenging the legality of the IST and its failure to ensure respect for human rights.
d. 21 December 2005: A supplementary motion challenging the legality of the IST.
e. 1 February 2006: A preliminary motion requesting the disqualification of Chief Judge Abdel-Rahman on grounds of bias.[81]
f. 20 February 2006: A supplementary motion requesting the disqualification of Chief Judge Abdel-Rahman on grounds of bias.[82]
g. 15 March 2006: the seventeen point request, including respect for some basic human rights of fair trial.

Moreover, the IST has shown itself unwilling and/or unable to ensure the safety of defense counsel in spite of repeated requests to take action. Former Chief Judge Amin Rizgar had even agreed to take the matter into consideration by referring it to the President of the Tribunal. Nevertheless, no adequate action was taken despite the killing of three defense counsel.

*The Flawed Creation of the IST*

On 15 June 2003, the United States created the CPA as an organization under the control of the United States Department of Defense. The CPA was headed by Mr. L. Paul Bremer; an American who held all ultimate sovereign (legislative and appointment) authority according to CPA Regulation No. 1.[83] Between 15 June 2003 and 28 June 2004, the CPA promulgated twelve regulations, one hundred orders, and seventeen memoranda that allegedly "established a comprehensive legal system and answered most [legal] questions"[84] despite a being an occupying power with an obligation not to substantially change Iraqi law.

On 13 July 2003 the CPA appointed twenty-five persons to an Iraq Governing Council (IGC) in accordance with CPA Regulation No. 6.[85] While Mr. Ahmed Chalabi was presiding over the IGC in September 2003, he named his nephew Mr. Salem Chalabi, who was neither an expert in international criminal law nor Iraqi criminal law, to prepare a draft Statute for the Iraqi Special Tribunal.

Between September and December 2003, a Statute for the IST was drafted based on a March 2003 draft by DePaul University Law Professor Cherif Bassiouni. Professor Bassiouni had prepared a draft Statute for an international tribunal with provision for adequately qualified judges,

prosecutors, and IST staff. All were to have experience and expertise in international criminal law.

The draft was instead used to create the IST as an Iraqi tribunal of the occupying powers. The United States choose the judges from among persons whose identities have never been officially made known and based on unknown criteria as to qualification. It does appear that these persons included a mix of United States and some Iraqi lawyers, who had been living abroad and who had advocated he overthrow of the government of President Saddam Hussein by violence as well as in some cases the execution of the President.

One of these individuals was Mr. Salem Chalabi, an avowed enemy of the President, who had for years advocated the violent overthrow of the government of Iraq. He bragged that he was personally selecting the staff of the IST.[86] At the same time he refused to provide details either as to how the IST had been constituted or what were to be the qualifications of the prospective judges. As a consequence, very little is known about the qualifications of the judges. Even their names and identities have not been disclosed. What is known about the background and qualifications of the judges is based on speculation.

The comments and concerns of leading non-governmental organizations working in the field of human rights and international law were ignored. Human Rights Watch has described the process by which the IST was created as one whereby the United States

> without establishing a transparent process to consult Iraqis or assess Iraqi attitudes towards issues of justice and accountability … [instead proffered a] … proposal for an "Iraqi Special Tribunal" emanated from individuals close to the CPA and the CPA-appointed Interim Governing Council (IGC). The process of drafting and revising the founding document of the Iraqi Special Tribunal lacked transparency. Numerous requests by Human Rights Watch and other human rights organizations and international experts to see and comment upon the draft law were rejected.[87]

Eighteen months after the Statute's public release by the US government, Amnesty International concluded after an extensive analysis that the "Statute of the Iraqi Special Tribunal currently in place is not consistent with international law."[88]

On 9 December 2003 the occupying powers led by the United States-controlled CPA issued CPA Order No. 48,[89] which is the Tribunal's enabling statute. The same day, CPA Administrator Mr. L. Paul Bremer temporarily ceded his exclusive legislative authority to the IGC in order to claim that